# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

MARC BEVAND, )
      Plaintiff, )
v. ) No. 16-1115-CV-W-FJG
BF LABS INC., ET AL., )
      Defendants. )

## ORDER

Currently pending before the Court is Defendant BF Labs Inc., Sonny Vleisides, Darla Drake, Jeff Ownby and Joshua Zerlan's Motion to Dismiss (Doc. # 17) and plaintiff's Motion for Leave to File Sur-Reply in Opposition to Motion to Dismiss (Doc. # 21).

### I. BACKGROUND

Plaintiff's complaint asserts causes of action against BF Labs, Inc. d/b/a Butterfly Labs, Sonny Vleisides, Darla Drake, Jeff Ownby and Joshua Zerlan for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), Breach of Contract, violations of the Missouri Merchandising Practices Act, Conversion and Unjust Enrichment. Plaintiff alleges that the defendants manufacture and sell Bitcoin[1] mining machines and services that consumers can use to generate bitcoins. Plaintiff is seeking recovery of the purchase price that he paid for the machines he ordered, plus consequential damages for Bitcoin mining machines that he pre-ordered but never received and for which no refund was given. Plaintiff also alleges that the defendants

---

[1] Plaintiff alleges that Bitcoin is a "virtual currency" payment system. Plaintiff alleges that bitcoins can only be generated through a process called Bitcoin "mining." This is a process where "miners" receive transaction fees and newly minted Bitcoins in return for using computers or other devices to solve computational puzzles. (Complaint, ¶¶ 16-20).

profited from Bitcoin mining for their own benefit by using plaintiff's machines without his permission or authorization.

## II. II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

## III. DISCUSSION

### A. RICO Claim

### 1. Elements of RICO

RICO states, "It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §1962(c). "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of

2

the suit, including a reasonable attorney's fee . . .." 18 U.S.C.§ 1964(c). "RICO, however, does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." H&Q Properties, Inc.v. Doll, 793 F.3d 852, 855 (8th Cir. 2015)(internal citations and quotations omitted). "We have in the past rejected attempts to convert ordinary civil disputes into RICO cases . . .RICO was not intended to apply to 'ordinary commercial fraud.'" Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001 (8th Cir. 2008), cert. denied, 555 U.S. 1136 (2009)(quoting Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir.1991)). "Racketeering activity includes a host of so-called predicate acts, . . .including those indictable under [18 U.S.C.] section 1341 (relating to mail fraud) [and] section 1343 (relating to wire fraud), 18 U.S.C. § 1961(1)(B)." Stonebridge Collection, Inc. v. Carmichael, 791 F.3d 811, 822 (8th Cir. 2015)(internal citations and quotations omitted). "A violation of § 1962(c) requires [plaintiffs] to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. Plaintiff has asserted the RICO claim only against the individual defendants. "The requirements of §1962(c) must be established as to *each* individual defendant." Craig Outdoor Advertising, Inc., 528 F.3d at 1027(emphasis added).

    **2. Predicate Acts**

Plaintiff alleges that the two predicate acts that the individual defendants committed were mail fraud and wire fraud. "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 406 (8th Cir.1999). "Under Crest Construction II, Inc. v. Doe, 660

F.3d 346, 358 (8th Cir. 2011), to state a RICO claim based on wire and mail fraud, plaintiffs under Rule 9(b) must allege the who, what, when, where, and how of wire and mail fraud." GSAA Home Equity Trust 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A., 133 F.Supp.3d 1203, 1225 (D.S.D. 2015).

> In the Complaint, plaintiff alleges:
>
> 96. The Individual Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically,
>
> a. The Individual Defendants collected numerous payments from numerous customers, including Plaintiff, for Bitcoin mining machines they never intended to deliver, as described herein, over a period of time, including but not limited to, between June 2012 and December 31, 2014; and
>
> b. The Individual Defendants advertised the availability of Bitcoin mining machines they never intended to deliver, as described herein, over a period of time, including but not limited to, between June 2012 and December 31, 2014; and
>
> c. The Individual Defendants routinely delayed delivery of Bitcoin mining machines in order to use them for their own mining purposes, rendering the products useless when they were ultimately delivered; and
>
> d. The Individual Defendants participated in this scheme by developing and executing the scheme to defraud and by training and supervising others at BFL to perpetrate the fraud described herein.

However, what is lacking in these factual allegations is the sort of specificity which is demanded by Fed.R.Civ.P. 9(b).

> A party must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result to satisfy Rule 9(b)'s particularity requirements. . . . Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud.

H&Q Properties, Inc., No. 8:13CV38, 2014 WL 2919139, *4 (D.Neb. June 26, 2014), aff'd, 793 F.3d 852 (8th Cir. 2015)(internal citations and quotations omitted). In this case, plaintiffs have not alleged which of the individual defendants engaged in these actions,

4

when the actions allegedly took place, what was communicated or how the individual defendants allegedly conducted their scheme through the use of the U.S. mails or electronic wire carrier. The only details provided in the Complaint reference actions that *BFL* took, i.e. "On August 29, 2014, *BFL* sent an email to Bevand . . .." "As of August 28, 2014, *BFL* stated on its website . . ." "On December 31, 2014, *BFL* sent Bevand an email informing him . . ." The Complaint contains no specific allegations against *any* of the individual defendants.  The Court finds that plaintiff's Amended Complaint contains merely boilerplate, conclusory allegations and does not contain the requisite specificity required by the Rule. "When facing a motion to dismiss, threadbare recitations of the elements of a RICO claim, 'supported by mere conclusory statements, do not suffice.'" Crest Constr. II, Inc., 660 F.3d at 357 (quoting Iqbal, 129 S.Ct. at 1949)).

    **3. Definition of a Pattern of Racketeering**.

"A pattern of racketeering activity is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity. . . .Continuity in this context refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Saldi v. American National Bank, No. 8:16-CV-61, 2017 WL 1097059, *3 (D.Neb. Mar. 23, 2017).

Defendants state that plaintiff does not contend in his Complaint that any of the individual defendants caused him to make a purchase, sent him a document or an email before his purchase or that he paid money to any of the individual defendants. Defendants note that plaintiff identified two emails which were sent to him (Complaint, ¶¶ 70,74), although plaintiff does not claim that any of the individual defendants sent these emails. Plaintiff also alleges that on September 15, 2014, BF Labs sent an email stating that his refund request had been approved. On December 31, 2004, BF Labs

5

sent another email advising that the FTC had frozen all of its accounts, but that the company was to regain control. (Complaint, ¶ 74). However, again, there is no allegation that these statements were false or that they were made by any of the *individual defendants*. Defendants argue that this is insufficient to allege a "pattern" of RICO activity.

Plaintiff argues in opposition that the defendants' RICO enterprise engaged in numerous transactions over the years with several customers (Complaint ¶ 96). Plaintiff states that if he establishes that at least one of the predicate acts of mail or wire fraud proximately caused his own injury, he "properly may allege acts of related fraud against other victims to establish a pattern of racketeering activity." GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).

Plaintiff may be able to rely on the acts of related fraud against other victims in order to show a pattern. However, the problem is that plaintiff has failed to allege with any specificity what acts of mail or wire fraud the individual defendants committed.

In the Complaint, plaintiff alleges:

65. On Aug 17, 2013, Plaintiff Marc Bevand ("Bevand") placed a purchase order on BFL's website for nine (9) standard "Monarch" units, each of which purportedly consisted of a 600 GH/s Bitcoin mining card.

. . .

67. As of March 21, 2014, the units had not shipped.

68. On that date, BFL offered to either (1) refund the amount paid by Bevand or (2) upgrade his pending order to nine (9) "Imperial Monarch" units in addition to the nine (9) standard "Monarch" units he had already ordered by simply paying an extra "shipping" fee of $342.00.

. . .

70. On August 29, 2014 BFL sent an email to Bevand saying they were now finally ready to ship his order, but that they had reduced their prices. If Bevand wanted to take advantage of this new pricing, this would "result in a new configuration of your order and replace all previous offers."

. . .

73. On September 15, 2014, "Davis W" from BFL stated that Bevand's refund request was "approved."

74. On December 31, 2014, BFL sent Bevand an email informing him that the FTC had frozen BFL's assets but that the company would regain control of their accounts that same day.

. . .

93. Pursuant to and in furtherance of their fraudulent scheme, each of the Individual Defendants committed multiple related acts of mail fraud and wire fraud, as defined in 18 U.S.C. § 1961, specifically, Defendants used the internet and the mail, in interstate commerce, with the intent to conduct the unlawful activity of fraud, as described herein, and obtained money by means of false and fraudulent pretenses in violation of 18 U.S.C. § 1341.

94. Pursuant to and in furtherance of their fraudulent scheme, each of the Individual Defendants committed multiple acts of wire, radio or television fraud, as defined in 18 U.S.C. § 1961, specifically, Defendants transmitted communications by wire, radio or television, in interstate commerce, with the intent to conduct the unlawful activity of fraud, as described herein and obtained money by means of false and fraudulent pretenses in violation of 18 U.S.C. §1343.

. . .

However, as discussed above, all of these allegations relate to actions that *BFL* took, not the Individual Defendants. Plaintiff has not alleged how the Individual Defendants used the mail or the internet in furtherance of their alleged scheme. Plaintiff has not alleged that any of the individual defendants communicated with him, what the substances of the communications were or when the information was supposedly communicated. The Plaintiff's Compliant rather contains only the barest allegations that the Individual Defendants committed predicate acts. Thus, the Court finds that plaintiff has failed to allege that any of the Individual Defendants committed any predicate acts or that the acts were part of any pattern of racketeering activity. In <u>Crest Const., II, Inc.</u>, 660 F.3d 346, the Court stated that "[w]hile the complaint is awash in phrases such as 'ongoing scheme,' 'pattern of racketeering,' and 'participation in a fraudulent scheme,' without more, such phrases are insufficient to form the basis of a RICO claim." <u>Id</u>. at 356.

7

Accordingly, the Court finds that plaintiff has failed to assert a violation of the RICO statute, because he has failed to allege the Individual Defendants conducted an enterprise through a pattern of racketeering activity. Additionally, plaintiff has failed to plead the RICO claim with sufficient specificity to meet Fed.R.Civ.P. 9(b)'s pleading standard and has failed to show that the Individual Defendants committed any predicate acts. For these reasons, the Court hereby **GRANTS** defendants' Motion to Dismiss Count I – RICO Claim against the Individual Defendants.

### B. Remaining State Law Claims

The remaining claims asserted against the defendants are all based on state law – Breach of Contract, violation of Missouri Merchandising Practices Act, Conversion and Unjust Enrichment. In Saldi, the Court noted that it "may retain supplemental jurisdiction over [plaintiff's] state-law claims . . .[b]ut it is not required to do so." Id. 2017 WL 1097059, *5. "In exercising its jurisdiction, the Court may consider factors such as judicial economy, convenience, fairness, and comity." Id. (quoting Elmore v. Harbor Freight Tools USA, Inc., 844 F.3d 764, 767 (8th Cir.2016)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims. Id. (citing Wilson v. Miller, 821 F.3d 963, 971 (8th Cir.2016)). "The Eighth Circuit has 'stress[ed] the need to exercise judicial restraint and avoid state law issues whenever possible' and the 'necessity to provide great deference and comity to state court forums to decide issues involving state law questions.'" GT Roofing Co. I, LLC v. Killion, No. 4:14-CV-2018-CAS, 2015 WL 4255466, *6 (E.D.Mo. July 13, 2015)(quoting, Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990)). Because the only claims which remain are state law claims, the Court hereby declines to exercise supplemental jurisdiction over these claims and dismisses them

without prejudice.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Defendants' Motion to Dismiss (Doc. # 17). The Court **DISMISSES WITH PREJUDICE** Count I (RICO Count).  The Court declines to exercise supplemental jurisdiction over the remaining state law claims, (Counts II, III, IV and V) and **DISMISSES** these claims **WITHOUT PREJUDICE**. The Court **GRANTS** plaintiff's Motion for Leave to File Sur-Reply in Opposition to Motion to Dismiss (Doc. # 21).


Date: <u>September 26, 2017</u>                        **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                               Fernando J. Gaitan, Jr.
                                                             United States District Judge